IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

MICHAEL A. BARBER,

                OPINION and ORDER

        Plaintiff,

v.                                        20-cv-763-slc

RAYMOND L. STEELE and
BLACKHAWK TRANSPORTATION, INC.,

        Defendants.
_____

In this civil diversity action for negligence, defendants Raymond Steele and Blackhawk Transportation, Inc. have filed a motion in limine asking the court to preclude plaintiff Michael Barber from seeking any damages for medical expenses or pain and suffering related to his knee replacement surgery because Barber lacks expert testimony to support such a claim. Dkt. 17. For the reasons below, I am granting defendants' motion in limine.

## OPINION

Barber alleges in his complaint that in August 2018, he was operating a Freightliner Coronado semi-trailer truck at a gas station in Florida when his semi was sideswiped by a Kenworth T680 semi-trailer truck operated by defendant Steele. Barber claims that as a direct result of this collision, he sustained damages for permanent bodily injury, physical pain and suffering, mental anguish and distress, anxiety, fear and fright, inconvenience, lost wages, and medical expenses. Dkt. 2 at ¶7. In his initial Rule 26(a) disclosures dated April 1, 2021, he claimed that his medical expenses totaled $98,390.79. Dkt. 18-1 at 3. Barber has since provided documentation showing that approximately $76,695.90 of his claimed medical expenses were for knee replacement surgery and related treatment provided in 2019 and 2020

by Dr. Gerald Murtagh, one of the medical experts identified in his initial disclosures. Dkt. 18-2.

Defendants point out, and Barber does not dispute, that Wisconsin law[1] requires expert testimony for "matters involving special knowledge or skill or experience on subjects which are not within the realm of ordinary experience of mankind, and which require special learning, study or experience." *Payne v. Milwaukee Sanitarium Found.*, 81 Wis. 2d 264, 276, 260 N.W.2d 386 (1977); *see also Faxel v. Wilderness Hotel & Resort, Inc.*, No. 19-CV-1026-SLC, 2021 WL 1668132, at *4 (W.D. Wis. Apr. 28, 2021) (citing same). "Determinations whether expert testimony is necessary are to be made on a case-by-case basis, focusing on the specific theories of liability that plaintiff is pursuing." *Faxel*, 2021 WL 1668132, at *4 (citing *Macias v. Mt. Olympus Resorts, LLC*, No. 18-CV-358-WMC, 2019 WL 3007094, at *6 (W.D. Wis. July 10, 2019) ("The court must assess the requirement for expert testimony with respect to [plaintiffs'] theories specifically, rather than some requirement more generally of expert testimony for negligence claims concerning bed bugs."); *Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis. 2d 147, 153–54, 172 N.W.2d 427, 430 (1969) (plaintiff's allegations that went to "hospital treatment in a professional sense" required expert testimony, but allegations about leaving patient unattended and under inadequate restraint were "matters of routine care" that did not)).

Defendants contend that Barber lacks the necessary expert testimony to support a finding that their alleged negligence caused or was a substantial factor in causing Barber's knee replacement. *See Bruss v. Milwaukee Sporting Goods Co.*, 34 Wis. 2d 688, 696, 150 N.W.2d 337,

---

[1] Although the accident at issue in this case occurred in Florida and Blackhawk is the only party domiciled in Wisconsin, both parties assume that Wisconsin law applies to Barber's claim, so I will do the same. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002) (applying law of forum state when there is no discussion of choice of law issues).

341 (1967) ("[T]he lack of expert testimony on the question of causation results in an insufficiency of proof where the issue involves technical, scientific or medical matters which are beyond the common knowledge or experience of jurors and the jury could only speculate as to what inferences to draw."). On January 20, 2022, defendants deposed Dr. Murtagh, who testified to the following about the state of Barber's knee condition:

- When Dr. Murtagh first saw Barber in July 2019, Barber's left knee had already reached "end stage degeneration" and the only treatment option available was knee replacement. Dkt. 18-3 at 14.

- Barber's medical records and x-rays from prior to the accident showed that he had pre-existing "significant degenerative joint disease," "degenerative arthritis," and pre-existing knee complaints. *Id.* at 19.

- By the time Dr. Murtagh treated Barber in 2019, x-rays showed that Barber's left knee was "bone-on-bone" or "end-stage." His left knee was misaligned, the joint lines had collapsed and "were obliterated," and there was no more cartilage to preserve. *Id.* at 19-20, 22-24.

- Barber would have required knee replacement surgery at some point even if the accident had never occurred. *Id.* at 20, 27.

- Barber's significant degenerative joint disease did not develop between the date of the accident and Dr. Murtagh's initial evaluation but had been developing over the course of years. *Id.* at 32-33.

- Dr. Murtagh could not really say when he thought Barber would have needed knee replacement had the accident never happened because "it's when the patient decides pain problems, limitations, lifestyle—you know, when he's decided enough is enough." *Id.* at 45.

Barber does not dispute that he had a pre-existing knee condition which would have required the replacement of his left knee at some point in the future. Instead, he argues that a

3

reasonable jury could conclude that the accident exacerbated the pain in his left knee and required him to seek more aggressive treatment (i.e., knee replacement surgery) sooner than he would have had the accident had not occurred.  Although Barber correctly points out that expert testimony is not always required to prove causation, *see Lindeman v. Mt. Olympus Enterprises, Inc.*, No. 14-CV-435-BBC, 2015 WL 4772925, at *2 (W.D. Wis. Aug. 12, 2015) (no expert needed to show that defendants' failure to restrain her properly on roller coaster caused her spinal fractures which had not existed before her ride), he hasn't shown–indeed, cannot show–that it would be within the common experience of lay jurors to assess whether the accident caused or was a substantial factor in exacerbating Barber's pre-existing need to replace his knee.  As defendants point out, "[f]or most cumulative trauma injuries, courts follow the general principle that a layman could not discern the specific cause and thus they have required expert testimony about causation."  *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010) (Finding that plaintiff's various injuries would not be obvious to layman because "they can be caused by a myriad of factors, none of which is obvious or certain.").

The deposition testimony that Barber cites in *support* of his causation argument actually establishes that a jury could *not* determine with any certainty whether the accident aggravated or exacerbated Barber's knee condition.  When asked how much he thought the accident sped up the need for Barber's total left knee replacement, Dr. Murtagh stated:

> I mean, it's, kind of hypothetical.  If he hit it, jammed it, and twisted it, he would have aggravated it, and you know irritated the condition and made it more symptomatic and made it worse, and then he would have had to require more aggressive treatment, and that's what they were doing upline before we got involved, but, I mean, there's really no way I can answer that.  I don't know.  I don't know how to answer that.

Dkt. 18-3 at 29-30.

4

Dr. Murtagh continued:

> [I]f we take the history as presented to me that he may have jammed it, twisted it, hit it on the door frame, if you hit your left knee on the door frame, you would twist your knee and the medial compartment would grind and it would -- he might have spin [*sic*] out part of his meniscus. You see this right here. Macerated tear, extrusion of the medial meniscus. And so everything is just -- that's why we use the global term of aggravation preexisting.

*Id.* at 33.

In sum, Barber lacks sufficient medical expert testimony to establish causation, and such testimony is necessary in this case. Therefore, Barber is barred from claiming as an element of his damages at trial the damages related to his knee replacement surgery.

## ORDER

IT IS ORDERED that the motion in limine filed by defendants Raymond Steele and Blackhawk Transportation, Inc. (dkt. 17) is GRANTED.

Entered this 1st day of March, 2022.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge

5